**In re ADOPTION OF A.P. & A.P., Minors,**

**Appeal of C.P., Natural Mother, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 2006.
Filed March 21, 2007.

Dirk E. Berry, Carlisle, for appellant.

Megan A.E. Riesmeyer, Carlisle, for M.P., appellee.

Ruby D. Weeks, Carlisle, for Cumberland County CYS, appellee.

Jacqueline M. Verney, Carlisle, Guardian Ad Litem, for appellee.

BEFORE: TODD, BENDER, and COLVILLE,* JJ.

OPINION BY TODD, J.:

¶ 1 C.P. ("Mother") appeals the orders entered April 3, 2006 by the Orphans' Court Division of the Cumberland County

* Retired Senior Judge assigned to the Superior Court.

Court of Common Pleas terminating her parental rights to her two daughters, A.P., born July 31, 2000, and A.P., born February 16, 2002. Upon review, we affirm.

¶ 2 The trial court summarized the facts of this case as follows:

Mother and her former husband are the natural parents of four children, including [A.P. and A.P.]. In December of 2003 mother had a fifth child to her paramour. Feeling overwhelmed, she asked the agency to put her four older children into placement.[1] However, rather than place the children, the Agency made arrangements for their father and the paternal grandmother to keep the children for a few days to give mother a break.

By May of 2004 there were numerous agencies providing services to the family. On May 11, 2004 an interagency meeting was held to discuss major concerns with regard to the children's well being. First and foremost among those concerns was mother's failure to follow through with services.[2] Despite having been invited to attend the meeting, mother did not do so. After the meeting, the agency caseworker and the family based team went out to meet with mother to discuss their concerns. Rather than work to address those concerns, mother stated that she no longer wanted her four older children, desiring instead to start a new life with her boyfriend and their new baby.

As a result of the May 11, 2004 meeting the four older children were placed by the Agency. Two of the children

went into the custody of their father and paternal grandmother, where they remain today. The two girls at issue in these proceedings were placed with mother's sisters. After a brief stay with their maternal aunts, these girls were placed together in the foster home where they have remained for more than two years.

Shortly after the placement of her four older children mother expressed a desire to have them adopted. On repeated occasions the Agency counseled her that she should not be so quick to give up on her children. Rather, she was advised to work on the goals in her permanency plan in order to achieve reunification. Nevertheless, mother approached the foster mother in July of 2004 to ask if she would consider adopting these girls.

Mother visited with the children sporadically until September of 2004. She has not visited with them since then. She did attend the permanency review hearing that was held on November 10, 2004. At that time the Agency, the Guardian Ad Litem, and the children's natural father were all requesting a goal change to adoption. The Juvenile Master recommended that the goal remain "return home" because Mother was still "unsure of what she wants to have happen." The Master concluded his report with the following:

Counsel for the children's mother indicates that the system has failed her and that she should continue to have an opportunity to reunite with her

1. The trial court added that "[t]he Agency had an open case on this family and had been working with it for quite some time." (Trial Court Opinion, 6/19/06, at 2 n. 4.)

2. The trial court noted: "Other concerns included mother's being overwhelmed with her parenting responsibilities, constantly calling

crisis intervention, padlocking the children in their car seats to control them, letting them sit in high chairs for hours, and medicating them to make them sleepy and, therefore, easier to control." (Trial Court Opinion, 6/19/06, at 2 n. 5 (record citations omitted).)

children. **Mother was advised that she needed to cooperate with the Agency and work actively to attempt to get her children back.** Since it is an early date to change the goal to adoption, it is recommended that the present placements continue with the goal to remain to return home[.] **[U]nless progress is made, a change of goal to adoption should be seriously considered at the next permanency hearing.**

(emphasis added).

Mother made no attempt to see or contact these girls until the next scheduled permanency review on May 25, 2005.[3] At that time her attorney informed the Agency that mother wanted to resume visits. The Agency sought input from the children's counselor. Based upon her recommendation, the visits were not resumed.

Despite the Juvenile Master's admonition that she "needed to cooperate with the Agency," mother had no contact with her caseworkers between the hearing in November 2004 and the scheduled hearing in May 2005. She has consistently failed to cooperate with the Agency or any other service provider. She made no secret of the fact that she has a deep (and in our view unfounded) distrust of the Agency.

\* \* \*

Furthermore, she made no attempt to comply with the terms of her permanency plan. Specifically, she did not 1) maintain contact with the children; 2) participate in medical and dental care, educational planning or counseling for them; 3) participate and successfully complete the TIPS program; 4) keep the Agency informed of her current address and phone number or; 5) obtain a psychiatric evaluation and comply with the treatment recommendations.

Mother's parenting skills, or lack thereof, had a direct impact on the development of these children. The foster mother described their condition when they came to live with her:

The main problem that we had when we first got these girls were the speech. The older child could not—you could not understand the older child. The younger child could not talk at all.

They were not potty-trained. They threw major temper tantrums. They screamed and yelled almost all night long.

Our house was like chaos the first good couple of months that we had the children. It was just nonstop . . . .—because the girls just threw such major temper tantrums. They were violent with one [another]. They were violent with the other children. . . . They just were very violent.

The older child also showed signs of emotional abuse. She articulated a fear of her mother and of having to return to her. Through the patient efforts of the foster parents, appropriate medical attention, and counseling, the girls have thrived. They are developmentally on track and feel safe and loved. As importantly, the children have bonded with their foster/adoptive parents. They consider them to be their "mom and dad." No such bond exists between mother and the children.

(Trial Court Opinion, 6/19/06, at 2–5 (record citations and some footnotes omitted).)

---

3. The trial court noted that, at Mother's request, the next permanency review was rescheduled for June 29, 2005. After that review was held, the goal was changed from reunification to adoption, and on May 9, 2006, this Court affirmed the goal change.

¶ 3 In July 2005, the Cumberland County Children and Youth Services ("CYS") filed a petition to involuntarily terminate Mother's parental rights to A.P. and A.P., and after holding several days of hearings, the trial court terminated Mother's rights to these two girls on April 3, 2006. This timely appeal followed, wherein Mother raises numerous issues for our review, which we have synthesized and paraphrased:

I. Whether there was sufficient evidence to support the termination of Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(8)?

II. Whether the trial court abused its discretion in reopening the record to allow for a bonding assessment?

III. Whether the trial court abused its discretion in refusing to allow A.P. or A.P. to testify?

IV. Whether the trial court abused its discretion in qualifying the children's therapist as an expert?

V. Whether the Juvenile Act, 42 Pa. C.S.A. § 6301 *et seq.*, is unconstitutional?

(*See* Appellant's Brief at 4–5.)

¶ 4 Preliminarily, we note that when reviewing an appeal involving the termination of parental rights, we employ a broad, comprehensive review of the record to determine whether the trial court's decision is supported by competent evidence. *In re B., N.M.*, 856 A.2d 847, 853 (Pa.Super.2004). We will not disturb a trial court's determination in this regard unless it lacks support in the record or constitutes an abuse of discretion or error of law. *Id.* An abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.*

¶ 5 In this case, CYS sought to have Mother's parental rights terminated pursuant to subsection (a)(8) of 23 Pa. C.S.A. § 2511, which provides, in pertinent part:

### § 2511. Grounds for involuntary termination

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

¶ 6 Mother first argues that there was insufficient evidence to support the termination of her parental rights under Section 2511(a)(8). Initially, we note that although the burden of proof was on CYS to establish by clear and convincing evidence the grounds for terminating Mother's parental rights under that section, our appellate review does not require us to find clear and convincing evidence in support of the court's decision to terminate her rights. *See In re S.H.*, 879 A.2d 802, 806 (Pa.Super.2005). As we stated in *In re S.H.*, "[w]e will affirm if the trial court's findings are supported by competent evidence, even if the record could also support an opposite result." *Id.*

¶ 7 In finding sufficient evidence to support the termination of Mother's parental rights under Section 2511(a)(8), the trial

court stated in its opinion filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure:

> We were satisfied by clear and convincing evidence that all of the elements required for termination under [Section 2511(a)(8) had been proven. The children were removed on May 11, 2004. More than 12 months had passed at the time the petition was filed in July 2005. The conditions which led to the removal continued to exist. Mother had taken no steps to improve her parenting skills or to cooperate with the Agency in addressing the concerns which led to placement. She did not complete the TIPS parenting program nor did she obtain a psychiatric evaluation. She is no more cooperative with the Agency today than she was when the children were placed. In fact, if it is possible, her willingness to cooperate is even less today than it was when the children were placed, *albeit* for different articulated reasons.[4]
>
> Finally, it was crystal clear that termination of mother's parental rights would best serve the needs and welfare of the children. It would open the way for them to be adopted by the foster parents with whom they are bonded and by whom they are loved. To take them from the safe, secure and loving environment in which they have thrived would be devastating to them. On the other hand, they have no real bond with mother and continued loss of contact with her will not adversely affect them.

(Trial Court Opinion, 6/19/06, at 6–7.) Following our thorough review of the record, we agree with this analysis, and for the same reasons, find competent evidence to support the termination of Mother's parental rights under Section 2511(a)(8). We thus reject Mother's arguments on this point.

■ ¶ 8 Based on this Court's decision in *In re T.F.*, 847 A.2d 738, 742 (Pa.Super.2004), Mother next argues that the trial court abused its discretion in re-opening the record to allow for a bonding assessment. We find the court's actions in this case, however, to be fully consistent with our holding in *In re T.F.* In that case, we reversed the trial court's order granting the termination of parental rights because there was insufficient evidence as to the needs and welfare of the children. We remanded the case to allow the parties to provide additional evidence concerning the effects of termination on each child. *Id.* at 745. In this case, as the trial court explained in its 1925(a) opinion, during closing arguments, the court expressed doubts as to whether the record contained sufficient evidence as to the effects upon the children of the termination of Mother's parental rights. In keeping with our decision in *In re T.F.*, the court determined that it would be prudent to take additional evidence on that issue, and in the interest of judicial economy, concluded it was best to do so at that time, rather than on remand. Following our review of the record, and particularly in consideration of *In re T.F.*, we find that the trial court acted appropriately and did not abuse its discre-

---

4. The trial court added:
   She was uncooperative at first because she did not want to work toward reunification. She now states that her uncooperative attitude stems from a distrust of the Agency. We find that her distrust was totally unfounded. We suspect that it was manufactured to excuse her unwillingness to work toward reunification. Furthermore, we have found her testimony regarding Agency plots and threats to take her youngest child to have been entirely unbelievable. In general, we have determined credibility issues in favor of the Agency and its witnesses. (Trial Court Opinion, 6/19/06, at 6 n. 13.)

tion in re-opening the record to allow for additional evidence on how terminating Mother's parental rights would affect the children, and in particular, in directing that a bonding assessment be conducted and in hearing evidence concerning the results of that assessment.

¶ 9 With respect to Mother's third and fifth claims, we find them to be waived. Mother waived her third claim by failing to include it in her court-ordered 1925(b) statement. *See In re Estate of Daubert,* 757 A.2d 962, 963 (Pa.Super.2000) (noting that any issues not raised in a 1925(b) statement filed at the lower court's direction are waived, citing *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998)). Mother waived her fifth claim by failing to first raise it with the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

¶ 10 In her fourth claim, Mother argues that the trial court abused its discretion in qualifying Shelly Koch, a therapist who had been counseling one of the children since 2004, as an expert because she was unlicensed and uncertified. As Mother has failed to properly develop or cite any legal authority in support of her argument, however, we find it to be waived. *See Nemirovsky v. Nemirovsky,* 776 A.2d 988, 994 (Pa.Super.2001) (issue waived where appellant offered only a cursory argument and failed to cite to any supporting caselaw); *Commonwealth v. Ellis,* 700 A.2d 948, 957 (Pa.Super.1997) (holding that waiver results when an appellant fails to properly develop an issue or cite to any legal authority to support his contention). Moreover, we note that even if the argument had been properly developed, it lacks merit. As this Court has recognized, "[t]he standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pre-

tension to specialized knowledge on a subject for which expert testimony is admissible." *Commonwealth v. Doyen,* 848 A.2d 1007, 1014 (Pa.Super.2004). As the trial court noted in its 1925(a) opinion, Koch received a master's degree in mental health counseling in 2003. When she was called to testify in this case, she had been counseling children since 2001 and had been employed as a child mental health counselor with Holy Spirit Hospital in Cumberland for over three years. Based on this background, we agree with the trial court that, regardless of whether Koch was certified or licensed, she was qualified to testify as an expert in the field of mental health counseling and we find no abuse of discretion in the court allowing her testimony in this regard.

¶ 11 For all of the foregoing reasons, we find that the trial court properly granted CYS's petition to terminate Mother's parental rights to her children, A.P. and A.P.

¶ 12 Orders **AFFIRMED.**