J-S27021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 742 EDA 2022 |

Appeal from the Order Entered February 16, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000290-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 743 EDA 2022 |

Appeal from the Decree Entered February 16, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000027-2022

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED NOVEMBER 14, 2022**

Appellant M.W. (Mother) from the decree granting the petition filed by

the Philadelphia County Department of Human Services (DHS) to involuntarily

terminate her parental rights to her minor child, M.M.L. (Child), and the order

changing Child's permanency goal to adoption.[1]  Mother argues that the trial court erred in concluding that DHS presented clear and convincing evidence supporting the termination of her parental rights and the goal change from reunification to adoption.  After careful review, we vacate the trial court's order and decree and remand for further proceedings consistent with this memorandum.

We briefly summarize the facts and procedural history of this matter as follows.  The family first came to the attention of DHS on January 17, 2020, after receiving a general protective services (GPS) report alleging that the family, which included Child and her sibling M.W. (Sibling),[2] was residing illegally in a home that lacked electricity, heat, and food.  **See** Pet. For Term. of Parental Rights, 1/6/22, at Exhibit A, at 1 (unpaginated).[3]  Ultimately, Mother was uncooperative with DHS caseworkers' attempts to engage in safety planning and providing access to resources.

On February 26, 2020, the trial court appointed Robin Winthrop Banister, Esquire, as both guardian *ad litem* (GAL) and legal counsel for Child.  **See** Order Appointing Counsel, 2/26/20, at 1.

---

[1] Although J.L. (Father) passed away on March 24, 2021, the trial court terminated his parental rights on February 16, 2022.  **See** Trial Ct. Op., 5/11/22, at 2-3.

[2] Sibling, who has a different father than Child, is subject to a separate dependency and termination matter.

[3] Exhibit A, DHS's statement of facts, was admitted as an evidentiary exhibit at the termination hearing without objection.  **See** N.T. Hr'g, 2/16/22, at 1.

On May 5, 2020, DHS obtained an order of protective custody (OPC) for Child and her sibling following a violent altercation at a homeless shelter in which Mother allegedly became agitated with a security guard, picked up a stroller in which Child was sitting, and swung it at the guard. *See* Pet. For Term. of Parental Rights, Exhibit A, at 3-4. The stroller hit the guard in the head and Child fell out of the stroller to the ground. *See id.*

On June 5, 2020, Community Umbrella Agency (CUA) Asociacion de Puertorriquenos en March (APM) held its initial single case plan (SCP) meeting. *See id.* Mother's parental objectives were listed as follows: ensure Child's medical and educational needs were met by signing consents and making sure Child attended school; participating in a mental health evaluation, following treatment recommendations, and signing releases and consents; ensuring that Child received proper mental health treatment and care; attending scheduled visitations; attending and participating in Achieving Reunification Center (ARC) services for parenting, housing, and employment; and complying with all court orders. *See id.*

The trial court adjudicated Child dependent on August 4, 2020. *See* Order of Adjudication, 8/4/20, at 1-2. CUA held a revised SCP meeting on November 9, 2020, and Mother's objectives remained the same. *See* Pet. For Term. of Parental Rights, Exhibit A, at 5 (unpaginated).

The trial court held a permanency hearing on December 18, 2020. Mother was once again referred for services including ARC, a drug screen, psychiatric evaluation, and therapy. The court appointed Jo-Ann Braverman,

Esquire, to serve as Child's GAL. ***See*** Order Appointing Counsel, 12/18/20, at 1. On the permanency review order, the court noted that Attorney Banister was to remain as "counsel for Child only." ***See*** Permanency Review Order, 12/18/20, at 1-2. At a subsequent permanency review hearing, Attorney Banister was identified as Child's counsel, and Attorney Braverman as Child's GAL. ***See*** Permanency Review Order, 5/14/21, at 1.

However, at the July 14, 2021 permanency review hearing, the court vacated Attorney Banister's appointment because "her representation is no longer necessary." ***See*** Permanency Review Order, 7/14/21, at 1-2. The record reflects that, at subsequent permanency review hearings, Attorney Braverman continued to be identified as Child's GAL. ***See*** Permanency Review Order, 9/29/21, at 1; Permanency Review Order, 12/1/21, at 1. The record does not contain a determination by the trial court about whether there was a conflict between Child's best and legal interests and whether Attorney Braverman could satisfy a dual role as GAL and legal counsel. ***See***, ***e.g.***, ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1235-36 (Pa. 2020) (reiterating that where the orphans' court has appointed one attorney "to represent both the child's best interests and legal interests, appellate courts should *review sua sponte* whether the orphans' court made a determination that those interests did not conflict.")

On January 10, 2022, DHS filed petitions to change Child's permanency goal to adoption and seeking involuntary termination of Mother's parental rights to Child pursuant to Section 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b).

The trial court conducted an evidentiary hearing on February 16, 2022. DHS presented the testimony of Cassandra Green, CUA caseworker. Mother testified on her own behalf. Attorney Braverman was the sole attorney appearing on Child's behalf. While questioning Ms. Green, Attorney Braverman asked, "Now, [Child] in a perfect world would want to be with her mom, correct?" to which Ms. Green responded, "Correct." N.T. Hr'g, 2/16/22, at 21. No further testimony or evidence was presented regarding Child's preferences.

At the conclusion of the hearings, the trial court terminated Mother's rights to Child pursuant to Section 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b), and changed Child's permanency goal to adoption.

Mother timely filed a notice of appeal and Mother's counsel filed a statement of intent to file an **Anders** brief in lieu of a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(c)(4). Nevertheless, the trial court issued a Pa.R.A.P. 1925(a) opinion addressing the termination of Mother's parental rights and the goal change to adoption. On appeal, counsel has filed an advocate's brief on Mother's behalf. Accordingly, we decline to find that Mother has waived her first through third issues pursuant to Pa.R.A.P. 1925(b).

On appeal, Mother presents the following questions for our review:

1. Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S. § 2511(a)(1) (2), (5) and (8)?

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the Adoption Act, 23 Pa.C.S. § 2511(b)?

3. Whether the trial court abused its discretion in granting a goal change to adoption, where the goal change from reunification to adoption was not supported by clear and convincing evidence?

4. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her child?[4]

Mother's Brief at 8 (formatting altered).

We begin by stating our standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted and formatting altered). "[T]he trial court is free to believe all, part, or none of the evidence

_____

[4] Mother's brief does not address her fourth issue or develop argument pertaining to this issue. Accordingly, she has waived her argument for purposes of appeal. *See*, *e.g.*, *In re A.P.*, 920 A.2d 1269, 1275 (Pa. Super. 2007) (finding issue waived where mother failed to develop or cite any authority in support of argument).

presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

The burden is on the petitioner "to prove by clear and convincing evidence that [the] asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Prior to reaching the merits of Mother's issues, we must first address, *sua sponte*, whether pursuant to 23 Pa.C.S. § 2313(a), the trial court appointed legal counsel to represent Child during the contested involuntary termination proceeding. **K.M.G.**, 240 A.3d at 1235. Our Supreme Court has interpreted Section 2313(a) "as requiring 'that the common pleas court appoint an attorney to represent the child's legal interests, *i.e.* the child's preferred outcome.'" **Id.** (quoting **In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018)). The failure to appoint a "'separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis.'" **Id.** (citing **T.S.**, 192 A.3d at 1082; **In re L.B.M.**, 161 A.3d 172, 183 (Pa. 2017)).

The Court reiterated that "a single attorney cannot represent a child's best interests and legal interests if those interests conflict." **K.M.G.**, 240 A.3d at 1236 (citation omitted). As such, the Court concluded, "the orphans' court must determine whether counsel can represent the dual interests before appointing an individual to serve as [Guardian *ad litem*]/Counsel for a child." **Id.** In addition, the Court held that "where an orphans' court has appointed a [Guardian *ad litem*]/Counsel to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* whether the orphans' court made a determination that those interests did not conflict." **Id.** at 1235.

Instantly, neither the adoption docket nor the dependency record reflect that any counsel was appointed for Child. In the dependency docket, on

February 26, 2020, the trial court appointed Robin Winthrop Banister, Esquire, as both guardian *ad litem* and legal counsel for Child. **See** Order Appointing Counsel, 2/26/20, at 1. On December 18, 2020, the court appointed Jo-Ann Braverman, Esquire, to serve as Child's GAL. **See** Order Appointing Counsel, 12/18/20, at 1. On the permanency review order, the court noted that Attorney Banister was to remain as "counsel for Child only." **See** Permanency Review Order, 12/18/20, at 1-2. However, at a subsequent permanency review hearing, the court vacated Attorney Banister's appointment because "her representation is no longer necessary." **See** Permanency Review Order, 7/14/21, at 1-2.

Accordingly, we are unable to determine from the record the manner in which the trial court appointed Attorney Braverman. The order of appointment refers to her as the GAL, and she appeared to argue for Child's best interests at the termination hearing, suggesting that she was serving as the GAL. However, the trial court also vacated Attorney Banister's appointment as Child's legal counsel because her services were no longer necessary.

Given that Attorney Braverman was Child's sole attorney during the involuntary termination proceeding, we have reviewed the certified record to determine whether the trial court determined prior to the proceeding that Child's best interests and legal interests did not conflict. Nothing in the record indicates that the trial court fulfilled its duty in this regard consistent with Section 2313(a), as construed by our Supreme Court in **K.M.G. Id.**, 240 A.3d at 1236. Therefore, we are unable to fulfill our duty to verify *sua sponte* that

the trial court determined that Attorney Braverman could represent Child's dual interests without conflict. ***Id.***

Accordingly, we are constrained to vacate the involuntary termination decree and remand for further proceedings. ***See Interest of A.J.R.O.***, 270 A.3d 563, 570-71 (Pa. Super. 2022) (holding that absent determination by the Orphans' Court that the child's legal and best interests could be served by single attorney appointed as GAL and legal counsel, this Court could not fulfill duty to verify that such determination was made, and remand was required). On remand, we direct the trial court to fulfill its duty consistent with Section 2313(a) to determine whether Attorney Braverman may represent both the best interests and legal interests of Child. If the trial court determines that no conflict exists between Child's dual interests, then the court shall re-enter the termination decree and goal change order as to Mother.[5] If the trial court determines that there is a conflict between Child's best interests and legal interests, then the court shall appoint separate legal counsel and conduct a new involuntary termination hearing as to Mother to provide legal counsel an opportunity to advocate on behalf of Child's legal interests pursuant to ***K.M.G. Id.***, 240 A.3d at 1235.

---

[5] We note that an order terminating Mother's parental rights would constitute a final order, appealable to this Court. ***See A.J.R.O.***, 270 A.3d at 570 (citing ***In re H.S.W.C.-B.***, 836 A.2d 908, 911 (Pa. 2003) (holding that "an order terminating or preserving parental rights . . . shall be deemed final when entered.")).

- 10 -

Decree vacated. Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/14/2022*