J-S37008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.L.V., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1144 EDA 2024 |

Appeal from the Order Entered March 26, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001032-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: E.R.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.L.V., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1145 EDA 2024 |

Appeal from the Decree Entered March 26, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000317-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.L.V., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1146 EDA 2024 |

Appeal from the Order Entered March 26, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001033-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.R.V., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.L.V., FATHER | : : : : : : : | |
| | : | No. 1147 EDA 2024 |

Appeal from the Decree Entered March 26, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000289-2023

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 17, 2024**

L.L.V. ("Father") appeals from the decrees terminating his parental rights to his children, Y.V., born December 2017, and E.V., born November 2012, as well as the orders changing each child's permanent placement goal to adoption.[1] Counsel has filed a petition to withdraw and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and **In re V.E.**, 611 A.2d 1267, 1275 (Pa.Super. 1992) (extending **Anders** procedure to "counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights"). We affirm the decrees and orders, and grant counsel's petition to withdraw.

_____

[1] We consolidated the appeals *sua sponte*. The trial court simultaneously terminated involuntarily the parental rights of T.F.R. ("Mother"). Mother has not appealed the court's determinations.

- 2 -

We glean the following from the record. The City of Philadelphia Department of Human Services ("DHS") received a report in June 2019 that Mother had left E.V. and Y.V. in the care of a neighbor and did not return for the children. When the neighbor could no longer care for them and could not reach Mother, she contacted the police. Upon investigation, DHS determined that, upon Mother's return, she appeared to be under the influence and did not have stable housing. Meanwhile Father, whom she did not identify by name, was incarcerated. DHS later learned that Father had been convicted in 2018 and sentenced to a term of incarceration of four to eight years. DHS obtained an order for protective custody and placed E.V. and Y.V. in a pre-adoptive foster home, where they remained at the time of the termination hearings.

In July 2019, the Community Umbrella Agency ("CUA") established a single case plan for Father, which included complying with CUA services, participating in case planning, following all prison requirements, placing his children on his visitation list and conducting visits when appropriate, and communicating with CUA regarding the expected date and terms of his release from prison. Father remained incarcerated and did not virtually attend the shelter care, adjudicatory, or permanency review hearings. In February 2020, CUA added a goal to Father's single case plan, namely, to participate in any available parenting or drug and alcohol programs while incarcerated. Father demonstrated moderate to full compliance with his objectives. In 2021, his goals were adjusted to account for his release on parole, to include enrolling

in services for parenting, housing, and employment, obtaining stable housing and employment, and complying with the terms and conditions of parole.

On April 20, 2022, Father attended his first permanency review hearing and continued to do so thereafter. He exhibited substantial compliance with his permanency plan, made progress towards alleviating the circumstances which had led to the children's placement, and "was permitted liberal, unsupervised community visitation as arranged by the resource parents, without Mother present." Trial Court Opinion, 7/26/24, at 12.

Unfortunately, beginning in January 2023, Father stopped attending permanency review hearings, made backwards progress on his goals and in alleviating the conditions that led to placement, had his unsupervised visitation rights revoked, tested positive for PCP and fentanyl, declined to attend parole-ordered inpatient treatment or provide his parole agent's name to the CUA case manager, and absconded from parole. As of May 2023, Father had refused to participate in drug and alcohol treatment and was once again incarcerated.

DHS filed petitions to terminate the parental rights of Mother and Father on August 2, 2023. The trial court held a combined goal change and termination hearing on October 18, 2023, at which Father appeared by phone.[2] As it relates to Father's appeals, the court heard testimony from

_____

[2] The children's best interests were represented by Joseph DeRitis as guardian *ad litem* ("GAL") and legal interests by their legal counsel, Linda Walters, Esquire.

Father's parole officer, the CUA case manager, E.V., and Father. Of note, E.V.'s testimony solely concerned her relationship with Mother. Attorney Walters opposed termination of Mother's parental rights as to E.V. but otherwise deferred to the court. The GAL acknowledged that the goal change to adoption would be in the best interests of each child. The court took the matters under advisement.

When the parties reappeared on January 10, 2024, DHS and Attorney Walters sought to reopen the record so that E.V. could testify regarding her preferences outside the presence of Mother. The court granted the request over Father's objection. E.V. testified about her relationship with both Mother and Father and her adoption desires. Thereafter, on March 26, 2024, the court terminated Father's parental rights as to Y.V. and E.V. pursuant to § 2511(a)(1), (2), (5), (8), and (b), and changed their permanency goals to adoption.

Father timely appealed each order and decree and included corresponding Pa.R.A.P. 1925(b) statements within his notices of appeal. The trial court issued an identical Rule 1925(a) opinion in each appeal, addressing only Father's claims attacking the termination proceedings and decrees. As noted, counsel has filed in this Court an *Anders* brief and petition to withdraw because counsel determined the instant appeal to be frivolous.[3] *See Anders* brief at 14. In the *Anders* brief, counsel presents the following issues:

---

[3] While we recognize that this is an *Anders* case, we note our displeasure that DHS, GAL, and Attorney Walters all opted not to file briefs in this Court.

1. Whether this Honorable Court should grant the request of undersigned counsel to withdraw pursuant to **Anders**.

2. Whether the trial court violated Father's due process rights by re-opening the record and allowing the child to testify for a second time following the closure of evidence at the termination hearing.

3. Whether the trial court abused its discretion and/or erred as a matter of law by finding [DHS] established by clear and convincing evidence the grounds for termination of parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5) and (a)(8).

4. Whether the trial court abused its discretion and/or erred as a matter of law by holding that the developmental, physical, and emotional needs and welfare of the children as set forth in 23 Pa.C.S. § 2511(b) would be best served by terminating Father's parental rights.

5. Whether the trial court abused its discretion and/or erred as a matter of law by finding that the permanent placement goal best suited to the welfare of the children is adoption.

**Anders** brief at 5-6 (capitalization and citations altered).

Before we reach the merits of the claims Father wishes to raise, we assess counsel's compliance with the following **Anders** procedures:

In order to comply with **Anders** and its Pennsylvania progeny, counsel must:

(1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the [appellant], counsel has determined the appeal would be frivolous;

(2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no merit" letter or *amicus curiae* brief; and

(3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa.Super. 2004) (cleaned up). If we are "satisfied that counsel has complied with the aforementioned requirements, [we] then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *Id*. (cleaned up).

Counsel has filed a petition to withdraw in compliance with the first requirement, as well as an *Anders* brief in line with the second requirement. To both, counsel attached as an exhibit the letter provided to Father advising him of counsel's petition to withdraw and his right to proceed *pro se* or with new counsel, and attaching a copy of the brief. Following a judgment order issued by this Court, counsel confirmed that he sent copies of the *Anders* brief, petition to withdraw, and letter to Father. Father has not responded to the *Anders* brief.

Based on the foregoing, we conclude that counsel has complied with the dictates of *Anders* and its progeny. Accordingly, we now "undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *S.M.B.*, 856 A.2d at 1237 (cleaned up). Since we discern no additional issues, we address the four substantive issues raised in the *Anders* brief.

Father's first three issues concern the termination decrees. In that regard, we have held as follows:

[W]hen reviewing an appeal involving the termination of parental rights, we employ a broad, comprehensive review of the record to

- 7 -

determine whether the trial court's decision is supported by competent evidence. We will not disturb a trial court's determination in this regard unless it lacks support in the record or constitutes an abuse of discretion or error of law. An abuse of discretion occurs when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*In re Adoption of A.P.*, 920 A.2d 1269, 1273 (Pa.Super. 2007) (cleaned up).

Preliminarily, Father assails the court's decision to reopen the record to allow E.V. to testify a second time as violative of his due process rights and an abuse of the court's discretion. *See Anders* brief at 14. Generally, it is within the court's discretion to reopen a case for additional testimony. *See In re J.E.F.*, 409 A.2d 1165, 1166 (Pa. 1979). In assessing whether to grant a request to reopen, the trial court must consider "factors, such as the timing of the request to open, the nature of the proffered testimony, and the reason for the party's failure to present such evidence during its case-in-chief[.]" *Commonwealth. v. Baldwin*, 58 A.3d 754, 763 (Pa. 2012). Additionally, the court balances "[t]he relative weight of the proffered testimony against the potential for disruption or prejudice, as well as the reasonableness of the party's excuse for failing to present such evidence sooner[.]" *Id*. (citation omitted). Our High Court has outlined circumstances where it has held it proper to reopen a case:

[W]here the evidence has been omitted by accident, inadvertence, or even because of mistake as to its necessity, but not where the omission was intentional. We have also stated that a case may be reopened where it is desirable that further testimony be taken in the interest of a more accurate adjudication and where an

- 8 -

honest purpose would be justly served without unfair disadvantage.

***J.E.F.***, 409 A.2d at 1166 (cleaned up).

In the instant matter, E.V.'s legal counsel and DHS sought to reopen the record to correct E.V.'s preferences regarding visitation with Mother. By way of background, at the termination hearing, E.V. was not asked about Father, but she was required to testify in front of Mother when stating her preferences as to Mother's future role in her life. Thereafter, Attorney Walters learned that her testimony no longer accurately reflected her wishes, and therefore she and DHS sought to reopen the record. Father objected because he did not have written notice of the request. After an off-the-record discussion with the attorneys, the trial court determined that it was in the interests of justice to allow E.V. to testify: "[I]t's my decision to hear again from the child in this matter. It's my understanding that there is some testimony or some desire that has changed since last testimony was taken. So it's my intention to hear from the child in the back today." N.T. Hearing, 1/10/24, at 9.

At the *in camera* hearing, the court heard additional testimony regarding E.V.'s wishes as to visits with Mother and Father. ***See*** N.T. Child Interview, 1/10/24, at 6-7, 10-11, 13-14, 22. The court reiterated in its Rule 1925(a) opinion that "[r]eopening the record to hear the testimony of an eleven-year-old child regarding who she feels safe around, loved by, and wants to raise her is clearly an act that is in the interest of justice and doing so was not only proper, but legally and morally necessary given the circumstances and the gravity of the proceedings." Trial Court Opinion, 7/26/24, at 22.

- 9 -

In the **Anders** brief, counsel observes that Father was on notice that E.V. could testify as the trial court is "required to ascertain the child's preferences at each permanency review" hearing pursuant to 42 Pa.C.S. § 6351. **See Anders** brief at 18. Moreover, counsel was present for her *in camera* testimony and had the opportunity to cross-examine her. As to the court's decision to reopen the case to allow the additional testimony, counsel notes in the **Anders** brief the importance of E.V.'s true preferences in the court's adjudication of the termination and goal change petitions. Moreover, counsel acknowledges the reasonableness of admitting the new testimony because eleven-year-old E.V. changed her mind and admitted she had not testified with complete candor at the termination hearing because she had to do so in front of her parents. *Id*. at 18-19.

Upon review, we conclude that the court acted within its discretion to reopen the record, and Father was not denied due process by its decision. Accordingly, we agree with counsel that this issue is wholly frivolous.

With respect to Father's appeal from the decrees terminating his parental rights as to his children, we set forth the following relevant legal principles:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. . . . We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 10 -

*In re Adoption of C.M.*, 255 A.3d 343, 358–59 (Pa. 2021) (cleaned up). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Section 2511 of the Adoption Act requires a bifurcated analysis of the grounds for termination and the needs and welfare of the child:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re Adoption of B.G.S.*, 245 A.3d 700, 705 (Pa.Super. 2021) (cleaned up). Clear and convincing evidence is that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up).

- 11 -

To affirm a termination decree, we need only agree with any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). As it pertains to the case *sub judice*, we consider § 2511(a)(2) and (b), which provide as follows in relevant part:

> **(a) General Rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511.

The grounds for termination of parental rights under § 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct but may also "include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of M.A.B.*, 166 A.3d 434, 444 (Pa.Super. 2017). We have long recognized that a parent is "required to make diligent efforts towards the

reasonably prompt assumption of full parental responsibilities." *Id*. at 443 (cleaned up). In that regard:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Id*. (cleaned up).

The court found that Father failed to overcome two significant hurdles: his drug abuse and his refusal to avail himself of treatment opportunities ordered by parole and offered by CUA. Additionally, the court found that Father had spent the majority of the children's lives incarcerated and had no estimated release date. *See* Trial Court Opinion, 7/26/24, at 23. The certified record confirms that while Father had made significant progress upon his initial release from prison, he was unable to maintain that progress. He swiftly backslid, again abusing drugs, refusing to attend programs to curb his addiction, and was re-incarcerated. Consequently, he remained incapable of providing the children with essential parental care at the time the agency sought termination. Having failed to remedy the causes of his incapacity, and given that he is unlikely to do so within a reasonable time, we conclude that the court properly found DHS had proven grounds for termination pursuant to § 2511(a)(2), and any challenge to that decision would be frivolous.

We now turn to § 2511(b), which is reviewed from the children's perspective. *See Matter of Adoption of L.C.J.W.*, 311 A.3d 41, 51 (Pa.Super. 2024). In conducting a § 2511(b) analysis, the court must place the children's "developmental, physical, and emotional needs and welfare above concerns for the parent. Accordingly, the determination of the child[ren]'s particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis." *Id*. (cleaned up). Those emotional needs "include intangibles such as love, comfort, security, and stability." *Id*. at 52 (cleaned up). As to the bonds children share with their foster and biological parents, "[t]he court must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task." *Id*. (cleaned up). Finally, this Court "must keep the ticking clock of childhood ever in mind" and we "will not disturb [the court's bonding] assessment when [its] factual findings are supported by the record." *Id*. (cleaned up).

At the hearings, the court heard testimony that neither child wanted to visit with Father, and that they were fearful of him. On the other hand, E.V. and Y.V. desired to be adopted by their foster mother, whom they have been with for almost all of their dependency and who provides for their necessary care and daily needs. Both children are bonded to their foster mother and look to her for stability and comfort. The CUA case manager opined that

Father did not share a necessary and beneficial bond with either child, and that neither would be irreparably harmed by terminating his parental relationship. Based upon the evidence provided, the court found a parent/child bond between E.V. and Y.V. and their foster mother, and determined that severing Father's parental rights "would not have a detrimental effect on the developmental, physical, and emotional needs of the children." *See* Trial Court Opinion, 7/26/24, at 24 (capitalization altered).

Our review of the record bears out the trial court's conclusions and we discern no abuse of discretion on the court's part in determining that termination was in the best interests of Y.V. and E.V. pursuant to § 2511(b). Thus, we agree with counsel that Father's § 2511(b) proposed argument is also frivolous.

Finally, we turn to Father's goal change issue,[4] which we consider mindful of the following:

> This Court reviews goal-change orders for an abuse of discretion. When conducting this evaluation, we accept the findings of fact and credibility determinations of the trial court if they are supported by the record. We have explained our deferential examination in this regard: Not only are our trial judges observing the parties during the hearing, but usually they have presided over several other hearings with the same parties and have a

_____

[4] This issue is arguably moot in light of our decision to affirm the court's termination decrees. *In re D.R.-W.*, 227 A.3d 905, 917 (Pa.Super. 2020) (noting mootness in addressing merits of a parent's challenge to goal change following our decision to affirm the termination of parental rights). Nevertheless, consistent with our obligation to conduct an independent review in *Anders* appeals and in an abundance of caution, we address the merits of this issue.

longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court. We are not bound by the trial court's legal conclusions.

Placement goals are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-65. Section 6351 of the Juvenile Act directs that a juvenile court not only consider the appropriateness and feasibility of a child's current goal during the permanency review hearings, it also mandates that the court enter an order addressing whether to continue, modify or terminate placement. Thus, a goal change may occur as a result of a petition by the responsible agency, or *sua sponte* by the trial court during its mandatory review of the dependency matter. Regardless of the starting point, we have outlined the analysis a trial court must undertake when modifying a child's permanent placement goal as follows: The policy underlying the Juvenile Act is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the focus of dependency proceedings, including change of goal proceedings, is on the child. Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of the parents.

Pursuant to 42 Pa.C.S. § 6351(f) of the Juvenile Act, when considering a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court.

Additionally, the court must determine whether reasonable efforts were made to finalize the permanency plan in effect and whether

the current caregiver is providing the child with regular, ongoing opportunities to participate in age-appropriate or developmentally appropriate activities. Although we have held that parental progress toward completion of a permanency plan is an important factor, it is not to be elevated to determinative status, to the exclusion of all other factors. Ultimately, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*Int. of K.C.*, 319 A.3d 596, 599–601 (Pa.Super. 2024) (cleaned up).

At the time of the termination hearing, Y.V. and E.V. had been in care with their foster mother for over four years. Additionally, no date could be determined for when Father would be available for reunification. As recounted by counsel, "[t]he children were not safe with Father, based on his criminal history and ongoing issues with the criminal justice system, and [they] did not feel safe with Father." *Anders* brief at 37. Under these circumstances, we conclude that the trial court did not abuse its discretion in deciding that a goal change to adoption was in the best interests of E.V. and Y.V. *See Int. of D.R.-W.*, 227 A.3d 905, 918 (Pa.Super. 2020) (concluding that changing the children's permanent placement goals to adoption was in their best interest where they shared no bond with their father, they shared a bond with their foster parents, and their father would not be capable of parenting them in the near future).

Based on the foregoing, we agree with counsel that the issues Father seeks to raise on appeal are so devoid of merit as to be entirely frivolous. Accordingly, we affirm the decrees terminating his parental rights and orders

changing each child's permanent placement goal, and grant counsel's application to withdraw.

Application of Lee W. Kuhlmann, Esquire, to withdraw as counsel granted. Decrees affirmed. Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2024